GEORGE S. TOWLE, administrator, *vs.* MARY J. SWASEY & others.

A testator, by his will, gave to a woman whom he described himself as intending to marry, and whom he did marry soon afterwards, his dwelling-house and furniture, or, in event of his sale of the house, then $7000 "to enable her to purchase a comfortable home;" and also gave her for life the income of $10,000. The house was appraised at $5000, and was subject to a mortgage to secure a note given by the testator for $4000. The testator also gave to an adopted son, besides some small specific legacies, "the income arising from the sum of $10,000, to be expended by his guardian for his support and education during his minority, and the principal sum of $10,000" at majority. He gave several other legacies, and made no residuary disposition as to his estate. When he died, the assets were insufficient to pay the legacies. *Held*, (1) that the legacy of the income of $10,000 to the widow was to be preferred to all the other legacies, and was payable from the time of the testator's death; (2) that she was entitled to have the mortgage paid out of the personalty; (3) that the legacy of the income of $10,000 to the son was next to be preferred to the other legacies, and was payable from the time of the testator's death; and (4) that the legacy of the principal of $10,000 to the son must abate in common with the other legacies.

A legacy of "whatever sum may be on deposit in" a certain savings bank is specific.

Rents received by an executor from the real estate of his testator are not assets to be administered by him, although such real estate is afterwards sold for the payment of debts, but belong, with any interest accrued thereon while in his hands, to the heirs or devisees.

A testator, in making his will, gave a legacy to his sister, being partly induced by a desire to reward her for supporting their mother, as she had done and was still doing; and he told her that she would be compensated, as he had provided for her in his will; but there was nothing else to show any contract on the part of the testator, nor did the sister know the amount of the legacy. *Held*, that the legacy was not preferred, and, if the assets were insufficient, must abate in common with other general legacies.

If a bill of interpleader to determine questions of the preference of legacies under a will, and of the marshalling of the assets of the estate, is rendered necessary by the insufficiency of the assets to meet the requirements of the will, and a consequent difficulty in interpreting it, the costs of all parties are to be paid out of the estate.

BILL OF INTERPLEADER filed by the administrator with the will annexed of George B. Swasey, praying that the devisees and legatees under the will might interplead as to the effect of a

deficiency of the assets to satisfy the gifts to them. Hearing before *Colt*, J., who reported the case for the determination of the full court. The material facts, as they appeared from the report, were as follows :

George B. Swasey made his will August 29, 1865. By the first clause, he gave the good will of his business to a person who had been in his employment ; by the second, third, fourth and fifth clauses, he gave annuities of different amounts to his mother, to one of his sisters, to his sister in law, to one of his nieces and to two of his cousins ; by the sixth and seventh clauses, he gave $5000 to Cassandra Stevens, another of his sisters, and $1000 to her daughter. The rest of the provisions of the will were in these words, and there was no residuary clause :

" Eighth. I give to my adopted son, George Einor Swasey, the income arising from the sum of ten thousand dollars, to be expended by his guardian for his support and education, during his minority, and the principal sum of ten thousand dollars when he shall arrive at the age of twenty-one years.

" Ninth. I also give to my adopted son the portraits of myself and my late wife, of my said son and of his deceased sister, my gold watch, my books and jewelry of various kinds ; also, whatever sum may be on deposit in the Provident Institution for Savings in the town of Boston.

" Lastly. I give and devise to Mrs. Mary Jane Henderson, whom I intend soon to marry, my dwelling-house, No. 17 Ashland Street, in the city of Boston, and also my furniture and silver ware of every description. But in case said house shall be sold by me, then the sum of seven thousand dollars in money, to enable her to purchase a comfortable home. Also I give to her the interest arising from ten thousand dollars, during her natural life."

Soon after making his will the testator married Mrs. Henderson, and died November 13, 1865. George Einor Swasey, whom he had adopted as his son by virtue of a decree of the probate court for the county of Suffolk, under the provisions of the Gen. Sts. *c.* 110, was about eight years old at the time of his death, and was his sole heir. Cassandra Stevens and her husband

mainly supported the mother of the testator, who had many times expressed his sense of obligation to them on that account, and declared that they would be compensated, as he had provided for Mrs. Stevens in his will. The legacy to her was partly induced by a desire to reward her for the support of the testator's mother, but there was nothing further tending to show a contract on the part of the testator to provide a legacy as compensation for the services rendered or to be rendered. There was no disclosure by the testator of the amount of the legacy to her, nor any declaration that it should not be subject to abatement in common with the other legacies.

The sum which the testator had on deposit in the Provident Institution for Savings at the time of his death was $106. The house in Ashland Street devised to Mrs. Henderson, now the testator's widow, and which was taken possession of by her after the testator's decease, was appraised in the inventory at $5000, and was subject to a mortgage to secure a note and debt of the testator for the sum of $4000. The mortgage debt was paid off by the plaintiff, as administrator. Other real estate belonging to the testator was sold by the plaintiff in 1868 for the payment of debts, before which sale the plaintiff received the rents and profits and still held them. Besides these rents and profits, the assets in the plaintiff's hands amounted to about $11,000.

*F. E. Parker*, for the widow, Mary Jane Swasey. The gift of the income of $10,000 to the widow is, by operation of the St. of 1861, *c.* 164, in lieu of dower. She has foregone her right to waive this provision and to have her dower, and therefore takes this legacy by purchase and is to be preferred. It is immaterial that she was not the wife of the testator at the date of the will; the will speaks from the death. *Blower* v. *Morret*, 2 Ves. Sen. 420. *Hubbard* v. *Hubbard*, 6 Met. 50. *Pollard* v. *Pollard*, 1 Allen, 490. She is entitled to interest from the testator's death. *Pollard* v. *Pollard*, *ubi supra*. *Williamson* v. *Williamson*, 6 Paige, 298.

The mortgage debt secured on the house in Ashland Street was properly paid off by the administrator. Whatever may be the general rule of law in such cases, (see 2 Williams on Execu-

Towle *v.* Swasey.

tors, 1534; 2 Redfield on Wills, 868; *Hewes* v. *Dehon*, 3 Gray, 205,) here the intent of the testator is clear. His purpose was to procure his widow " a comfortable home," the expense of procuring which he estimates at $7000. The house was appraised at $5000, and is admitted not to have been worth more than $7000. An equity of $1000 or $3000 was not the testator's idea of a comfortable home. The case is stronger than *Andrews* v. *Bishop*, 5 Allen, 490.

The legacy to Mrs. Stevens is not preferred.

*R. T. Paine, Jr.*, for George Einor Swasey. The rule that personal assets must exonerate land from a mortgage debt does not hold where they are needed to pay legacies. *Lutkins* v. *Leigh*, Cas. temp. Talbot, 53. *Hamilton* v. *Worley*, 2 Ves. Jr. 62. *Tipping* v. *Tipping*, 1 P. W. 729. *Davis* v. *Gardiner*, 2 P. W. 187. *Rider* v. *Wager*, Ib. 328. *Lucy* v. *Gardener*, Bunb. 137. *Cope* v. *Cope*, 2 Salk. 449. *Johnson* v. *Child*, 4 Hare, 87, 94. Adams Eq. 263, 264. Coote on Mortgages, 483. Ram on Assets, 423. 2 Jarman on Wills, 555, 602. 2 Washb. Real Prop. (3d ed.) 185. The utmost which can be urged in favor of the exoneration is that the testator supposed that the mortgage would be paid from the residue of his personal estate, which would have been done had it sufficed.

The rents received by the administrator belong to the son as heir. *Gibson* v. *Farley*, 16 Mass. 280. *Stearns* v. *Stearns*, 1 Pick. 157. *Newcomb* v. *Stebbins*, 9 Met. 540. *Palmer* v *Palmer*, 13 Gray, 326. *M'Coy* v. *Scott*, 2 Rawle, 222.

The legacy to the testator's adopted son, in the eighth clause, should be preferred. It is not necessary to decide that all gifts by will to children are preferred, but only that a gift of a sufficient sum expressly for the education and support of a child, whom the testator leaves an orphan without other provision, should be preferred. *Duncan* v. *Alt*, 3 Penn. 382. *Hubbard* v. *Hubbard*, 6 Met. 50. *Burridge* v. *Bradyl*, 1 P. W. 126. *Lewin* v. *Lewin*, 2 Ves. Sen. 415. 1 Roper on Legacies, 421. 2 Redfield on Wills, 552. Legacies to infants carry interest from the death of the testator, where no support is provided until the legacy is payable. *Pollard* v. *Pollard*, 1 Allen, 490. *Cowdin* v. *Perry*, 11 Pick. 503, 509. *Dawes* v. *Swan*, 4 Mass. 208, 215.

The legacy to Mrs. Stevens must abate with the others. There was no contract with her.

*T. K. Lothrop*, (*A. Lincoln* with him,) for the other legatees, Whether any legacy is to be preferred is a question of the testator's intention. The burden is on the party seeking priority, to make out clearly and conclusively that it was intended. Mere relationship and propinquity are not sufficient grounds to infer priority. If a legatee at the time of the execution of the will had any legal claim on the testator's estate which the court can see that the testator intended to satisfy by the legacy, such legacy will not abate ; but if the legal claim arose after the making of the will, there can be no ground for presuming that the legacy was intended in satisfaction of an obligation not existing at the time the will was made. *Pollard* v. *Pollard*, 1 Allen, 490. *Miller* v. *Huddlestone*, 3 Macn. & Gord. 513. *Blower* v. *Morret*, 2 Ves. Sen. 420. 2 Redfield on Wills, 518, 552, 553. 1 Roper on Legacies, 421 *& seq.* See also *Thwaites* v. *Foreman*, 1 Collyer, 409 ; *Beeston* v. *Booth*, 4 Madd. 161 ; *Brown* v. *Brown*, 1 Keen, 275 ; *Ashburnham* v. *Ashburnham*, 16 Sim. 186 ; *Petre* v. *Petre*, 14 Beav. 197 ; *Heron* v. *Heron*, 2 Atk. 171 ; *Fretwell* v. *Stacy*, 2 Vern. 434 ; *Philanthropic Society* v. *Kemp*, 4 Beav. 581 ; *Sturge* v. *Dimsdale*, 6 Beav. 462 ; *Coppin* v. *Coppin*, 2 P. W 291, 296 ; *Sibley* v. *Perry*, 7 Ves. 522 ; *Nannock* v. *Horton*, Ib. 391 ; *Attorney General* v. *Hudson*, 1 P. W. 674 ; *Hume* v. *Edwards*, 3 Atk. 693 ; *Ex parte Thistlewood*, 19 Ves. 236, 250 ; *Ex parte Chadwin*, 3 Swanst. 380 ; *Brown* v. *Allen*, 1 Vern. 31 ; 2 Williams on Executors, 1170, 1171.

The legacy to Mrs. Stevens has priority. *Rawlins* v. *Powel*, 1 P. W. 298. *Masters* v. *Masters*, Ib. 421. *Shirt* v. *Westby*, 16 Ves. 393. *Williamson* v. *Naylor*, 3 Y. & Coll. Exch. 208. 1 Roper on Legacies, 419, 431. 2 Redfield on Wills, 515.

COLT, J. In the administration of testamentary assets, the general rule is, that when there is a deficiency after the payment of debts, expenses and specific legacies, the loss shall be borne entirely by those pecuniary legacies which are in their nature general. The testator, in the absence of clear proof to the contrary, must be deemed to have acted upon the belief that his

estate would be sufficient to answer the purposes to which he devotes it. Men do not ordinarily go through the formality of making wills and disposing of property which they do not own, or do not reasonably hope to become possessed of. If the chances of deficiency are anticipated and provided for by the terms of the will, then the directions of the testator will govern, and the loss must be borne by those on whom he places it. It is always a question of intention, and the relations of the several legatees, in respect to their legal claims upon the testator for support, should be taken into account in determining whether the general rule of abatement should be departed from. As between legacies which are in their nature mere bounties, the presumption of intended equality will prevail, unless there is unequivocal evidence to the contrary; and no priority will be allowed where the expressions of the will are ambiguous. *Shepard* v. *Guernsey*, 9 Paige, 357. 2 Williams on Executors, 1233. *Thwaites* v. *Foreman*, 1 Collyer, 409.

1. The rule does not apply when the testamentary gift is founded on a valuable consideration, such as the relinquishment of the widow's right of dower in her husband's estate, or when the legacy is given in pursuance of a contract founded upon a good consideration. The widow's title to dower is paramount; if she accepts the provisions of the will as a substitute for this legal right, she takes not strictly as a beneficiary, but as a purchaser for a valuable consideration, and without being subject to that abatement to which general legacies are subject. *Pollard* v. *Pollard*, 1 Allen, 490. 2 Williams on Executors, 1229. 2 Redfield on Wills, 553, note. Under our statute, if the widow does not waive the provisions of the will within six months, she loses her right to dower, unless it plainly appears by the will that the testator intended such provisions in addition to her dower. If she foregoes her right to dower, therefore, she takes the legacy in the character of a purchaser, and is not treated as a beneficiary in marshalling the assets. St. 1861, *c.* 164. 1 Roper on Legacies, 415, 433. *Clayton* v. *Akin*, 38 Georgia, 320.

It is here claimed that the widow is not entitled to the benefit of this rule, because at the time of making the will she was not

married to the testator and was only an object of his bounty having no legal claim on his estate. The legacy in this case was accompanied with declarations in the will of the testator's intention soon to marry the legatee; in view of which event the will appears to have been executed. It was given in contemplation of all the legal rights to his property which the subsequent marriage gave, and is brought within the same rule as if the marriage had preceded the making of the will.

The widow is therefore entitled to the payment of her pecuniary legacy, being the income given her for life, in preference to all the pecuniary legacies in the will, excepting the small legacy to the son of money on deposit in the savings institution, for reasons to be hereafter stated. She is entitled to this income from the death of the testator. *Pollock* v. *Learned*, 102 Mass. 49. *Pollard* v. *Pollard*, 1 Allen, 490.

2. The mortgage debt secured upon the dwelling-house devised to the widow was properly paid by the administrator. The intention of the testator, that she should have a home free from incumbrance, is sufficiently apparent. The mortgage debt was the debt of the testator; he makes a provision for her in money fully equivalent to its value as unincumbered property, in case it shall be sold; and he declares his purpose to provide a comfortable home for her. *Andrews* v. *Bishop*, 5 Allen, 490. Adams Eq. 261, note.

3. The gift to the son of whatever sum might be on deposit in the Provident Institution for Savings is a specific legacy. It is a gift of property specified and distinguished from all other property of the testator. If there had been no deposit at the time of the testator's death, the son would have had no claim upon the estate; and on the other hand, whatever cash was then in bank is not subject to assessment to make up any unexpected deficiency in the means to pay the other pecuniary legacies. By making it specific, the testator gives the strongest expression of his intention to exempt it from such reduction. It is set apart from the other assets, and must be classed with the other legacies of personal property in the ninth clause of the will, and paid in full before anything is paid to the general legatees. 2 Redfield on Wills, 460. *Armstrong's appeal*, 63 Penn. State, 312.

4. The rents of the real estate received by the administrator are not assets to be administered by him. In the absence of any agreement that they shall be so treated, they belong, with interest received upon them while in his hands, to the son and only heir. The lands were not devised, but descended to the son, subject to sale, if need be, for the payment of debts and legacies. *Stearns* v. *Stearns*, 1 Pick. 157. *Palmer* v. *Palmer*, 13 Gray, 326.

5. In addition to certain specific legacies, the testator gives to his son the income of a certain sum to be expended by his guardian for his support and education during his minority, and the principal sum when the son arrives at the age of twenty-one. It is contended that this entire provision in favor of the son is entitled to priority. This, as before stated, is a question of intention. The meritorious character of the legatee is not to be considered as affecting it, when there is nothing in the language of the will, or the character and declared purpose of the gift, to indicate an intention to prefer. The will is to be interpreted by what the testator has written, rather than by what he ought to have written. The circumstances of near relationship and dependence, though not of themselves sufficient, may however be regarded as constituting, in the language of the Lord Chancellor in *Miller* v. *Huddlestone*, 3 Macn. & Gord. 513, 528, "an auxiliary reason for allowing such priority where the words used in the will favor the notion of a priority to a sufficient degree." This is the doctrine of the leading case of *Lewin* v. *Lewin*, 2 Ves. Sen. 415. The executor was, in that case, directed to pay an annuity to the wife for the maintenance of a child, and Lord Hardwicke declared that it was a strong case to show that the annuity was intended to be preferred, especially in view of the fact that it was a provision for a child otherwise unprovided for. In *Miller* v. *Huddlestone*, 3 Macn. & Gord. 513, where the law is fully discussed, life annuities to a daughter, and to other relatives, were held not entitled to priority over other legacies, on the ground that the language of the will furnished no proof of such intention.

In the case at bar, the will makes special provision for the discharge of a natural obligation resting upon the father towards his son. The annuity is given expressly for his education and support during minority. It is in the form of a yearly allowance which

in amount is not more than sufficient for the purpose to which it is devoted, — a purpose which would be defeated if it is now liable to abatement. It terminates when he reaches twenty-one years of age; and the principal then becomes his. There is no other provision for his support and education, for it cannot be supposed that the testator contemplated that a son adopted by him before marriage would be supported by his widow out of the provision made for her. And we are of opinion that the intention is manifest, that this part of the gift to the son, namely, the income devoted to his support and education, should not be impaired in common with those general legacies which are mere bounties, by deficiency of assets, and is to be allowed from the death of the testator. *Duncan* v. *Alt*, 3 Penn. 382. *In re Barklay's estate*, 10 Penn. State, 387. 2 Redfield on Wills, 550, note. *Merritt* v. *Richardson*, 14 Allen, 239.

The principal sum to be paid to the son when he reaches majority stands upon a different ground. There is nothing in the will which gives that part of the legacy any preference. It is distinguishable in this respect from the gift of the income, and must be classed with the general legacies, subject to abatement.

6. The legacy to Cassandra Stevens, sister of the testator, is not preferred. To hold as a purchaser, she must prove that it was agreed to be given for a valuable consideration. The case finds that she and her husband supported their mother, and that the testator declared that they would be compensated, as he had provided for Cassandra in his will; but no sum was named, and there is nothing to show that there was a contract to provide a legacy as compensation for services rendered or to be rendered. The declaration of the testator referred to what had been already done by him in making his will, and gave no ground for the inference that the bequest to his sister was anything more than a bounty to her. *Rawlins* v. *Powel*, 1 P. W. 298. *Ridley* v. *Ridley*, 12 Law Times, (N. S.) 481.

7. As the controversy here arises out of the insufficiency of the estate to meet the disposition made by the testator, and the consequent difficulty in interpreting his will, the costs of all parties must be paid out of the estate. *Bowditch* v. *Soltyk*, 99 Mass. 136, 141.                                      *Decree accordingly.*