DUDLEY PORTER, trustee, *vs.* HENRY S. HOWE & others.
HENRY S. HOWE, executor, *vs.* HAVERHILL YOUNG
MEN'S CHRISTIAN ASSOCIATION & others.

Essex.    March 24, 1899. — June 27, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Will — Abatement of Legacies — Agreement without Consideration — Exoneration of Specific Devise — Mortgage — Deficiency of Assets — Public Charities — " Relationship " — Residuary Clause.*

Where the twelfth item of a will and all the items that follow it give legacies only out of the rest, residue, and remainder of the estate, after the payment of the legacies mentioned in the items that precede it, the contention that the payment of legacies under the first eleven items was erroneous, on the ground that the estate was insufficient to pay the legacies in full, and that these should abate proportionally with the others, is unsound.

A testator gave by will to the Young Men's Christian Association in H. " the sum of fifteen thousand dollars in addition to the ten thousand dollars for which I now stand pledged." He had previously signed and delivered to the officers of the association a writing in these words : " H., December 2, 1890.   Believing in the work of the H. Young Men's Christian Association, and realizing its need of a building of its own in which to do a more successful work in leading the young men to a right relation to their fellows and their God, I now subscribe the first five and the last five thousand dollars of seventy-five thousand dollars to be raised for the purpose of erecting in our city a building to belong to the Young Men's Christian Association."   This writing was without any valuable consideration, and only a little more than eleven thousand dollars, exclusive of the subscription by the testator, had at the time of his decease been subscribed or raised for the purposes mentioned in the writing.   *Held*, that the pledge was no longer in force, and that the legacy was for $15,000 only.

Where a testator directs his executors and trustees to pay off all mortgages and other encumbrances on certain real estate specifically devised by him and then convey it to the devisee, the executors and trustees are to pay the whole of the mortgage and not merely such proportional part of it as they pay of the pecuniary legacies, in view of the necessary abatement of them.

The general rule in case of a deficiency of assets is, that, unless it appears from the will that the testator otherwise intended, all general pecuniary legacies abate in

equal proportion; and there is no legal difference between legacies to individuals and legacies to public charities; nor does relationship furnish any test, although all such facts may be considered in determining the intention of the testator; and in the case in question there was nothing to justify a finding that the testator intended to give the legacies to individuals precedence over legacies to charities.

The words "further" and "then" in the phrase "further, my said executors and trustees shall then pay over the following gifts and bequests, namely," etc., do not ordinarily denote anything more than an order of sequence; and so far as is known they have never been held, without more, to make the legacies following them residuary; and they have repeatedly been held not to import a preference.

The reference in the last item of a will to the fact that "certain of the legacies and bequests named above are limited to be paid after certain events, as recited," etc., does not relate to the question of the abatement of legacies, but seems to refer partly to the distinction between legacies payable before the death of a legatee and those payable afterwards.

THE FIRST CASE is a petition to the Probate Court, by the trustee under the will of James H. Carleton, for instructions as to the construction thereof. The case was submitted on an agreed statement of facts, the nature of which appears in the opinion, and from the decree of that court several of the respondents appealed.

THE SECOND CASE is an appeal from the allowance of the executor's account.

The material portions of the will are as follows.

After various provisions, for the benefit of his sister, Mary C. Flint, and others, not necessary to be stated, came the following provision:

"12. All the rest, residue, and remainder of my estate, real, personal, and mixed, wherever found or situate, I give, devise, and bequeath to my executors and trustees hereinafter named, to them and to their heirs, in trust nevertheless to the uses and purposes and dispositions hereinafter set forth, namely."

Then, after three subdivisions providing for annuities, the will proceeded as follows:

"4th. To pay in quarterly payments the annuity of three hundred dollars hereby given to Mrs. Anna F. Bowzer ($300) for her life.

"5th. 13. Upon the decease of my sister Mary C. Flint, I direct my executors and trustees to make the conveyances pay the bequests and effect the dispositions which I appoint as follows, namely, First,

" To pay off all mortgages or other encumbrances whatever that may be upon my undivided half part of store (No. 232) numbered two hundred and thirty-two on Washington Street in the city of Boston, in said Commonwealth of Massachusetts, and thereupon by proper deeds of conveyance make over and convey to Henry S. Howe aforesaid the said undivided half of said store with its appurtenances to him, the said Howe and his heirs forever, and if said Henry S. Howe be not then living, then to his heirs and their heirs forever."

There was a mortgage upon the store, which was made by the testator's wife in her lifetime. The property was afterwards conveyed to the testator subject to this mortgage. After sub-divisions up to twelve and a half, mostly giving pecuniary legacies to individuals, the will proceeded as follows :

" Thirteenth. Further, my said executors and trustees shall then pay over the following gifts and bequests, viz.: to the Trustees of the Haverhill City Hospital, to be expended by them in the erection and maintenance of a hospital for contagious *deceases* within said city of Haverhill, and to the uses of such hospital forever, the sum of twenty-five thousand dollars ($25,000)."

Then after pecuniary legacies to charitable corporations from fourteenth to twentieth inclusive, the will proceeded as follows:

" Twenty-first. To the Young Men's Christian Association in said Haverhill, the sum of fifteen thousand dollars ($15,000) in addition to the ten thousand dollars ($10,000) for which I now stand pledged."

The testator had previously signed and delivered to the officers of this association a paper writing in these words : " Haverhill, December 2, 1890. Believing in the work of the Haverhill Young Men's Christian Association, and realizing its need of a building of its own in which to do a more successful work in leading the young men to a right relation to their fellows and their God, I now subscribe the first five and the last five thousand dollars of seventy-five thousand dollars to be raised for the purpose of erecting in our city a building to belong to the Young Men's Christian Association." This paper was signed on the day of its date, without any valuable consideration. Only a little more than eleven thousand dollars, exclusive of the

subscription by the testator, has been subscribed or raised for the purposes mentioned in said writing.

Then after subdivisions through twenty-seven giving pecuniary legacies chiefly to charitable corporations, the will provides as follows:

" Twenty-eighth.   To Linwood Cemetery in trust, the income thereof to be expended in keeping in order my burial lot in the grounds of said corporation three hundred dollars ($300). . . .

" 15.   Upon the decease of the last survivor of the annuitants herein named, my executors and trustees shall divide, make over, and distribute all the remainder of my estate of whatever name or description as follows, viz.: one half part thereof to the Trustees of the Haverhill City Hospital to the uses of said hospital forever.   And one half part of 'such remainder to the North Congregational Society in said Haverhill to its uses forever. . . .

" Further, it is my will that, notwithstanding certain of the legacies and bequests named above are limited to be paid after certain events, as recited, yet if at any time it shall appear to my executors and trustees that any legacy or bequest, so limited, could be then before the time, paid without such diminution of my estate as would render the income thereof inadequate to the requirements of the annuities herein provided.   And with especial advantage to the legatee, then at the request or with the concurrence in writing, of the said Mary C. Flint they may pay over such legacy or bequest."

. The cases were reserved by *Hammond*, J., for the consideration of the full court.

*W. A. Hayes, 2d*, for the plaintiff, read the papers in the case.

*M. Storey*, for Howe and his children.

*B. B. Jones*, for various legatees.

*I. A. Abbott*, for the Young Men's Christian Association of Haverhill and others.

*S. C. Darling*, for the American Board of Commissioners for Foreign Missions and others.

KNOWLTON, J.   These cases present questions of law in regard to the construction of the will of James H. Carleton. The second is an appeal from the allowance of the executor's account.   The appellants contend that the payment of legacies under the first eleven items of the will was erroneous, on the

ground that the estate is insufficient to pay the legacies in full, and that these should abate proportionally with the others. But it is plain that this contention is not well founded. The twelfth item of the will, and all the items that follow it, give legacies only out of the rest, residue, and remainder of the estate, after the payment of the legacies mentioned in the items that precede it. The decree of the Probate Court allowing the account must be affirmed.

The other is a petition to the Probate Court for instructions to the trustees under the will, in which several of the respondents took appeals from the decree of that court. By the twenty-first subdivision of the thirteenth item of the will, the testator gave to the Young Men's Christian Association in Haverhill as follows: " The sum of fifteen thousand dollars in addition to the ten thousand dollars for which I now stand pledged." He had previously signed and delivered to the officers of this association a paper writing in these words: " Haverhill, December 2, 1890. Believing in the work of the Haverhill Young Men's Christian Association, and realizing its need of a building of its own in which to do a more successful work in leading the young men to a right relation to their fellows and their God, I now subscribe the first five and the last five thousand dollars of seventy-five thousand dollars to be raised for the purpose of erecting in our city a building to belong to the Young Men's Christian Association." This paper was signed on the day of its date, without any valuable consideration. Only a little more than eleven thousand dollars, exclusive of the subscription by the testator, has been subscribed or raised for the purposes mentioned in said writing.

The will recognizes the pledge which the testator had previously given, and gives a legacy of fifteen thousand dollars. This legacy stands by itself, unaffected by the pledge. He gives it in addition to the pledge, and he leaves the pledge to have such an effect as it may. The pledge was only of a part of seventy-five thousand dollars to be raised for the purpose mentioned, and was in effect conditional upon the raising of that amount within a reasonable time. As only a small part of the amount has been subscribed, and the reasonable time within which to comply with the condition has already elapsed,

the pledge is no longer in force, and the legacy is for fifteen thousand dollars only.

The other questions in the case all grow out of the fact that the estate is insufficient to pay the legacies in full. By the first subdivision of the thirteenth clause of the will, the testator directed his executors and trustees to pay off all mortgages and other encumbrances on his undivided half of a certain store on. Washington Street in Boston, "and thereupon, by proper deeds of conveyance, make over and convey to Henry S. Howe aforesaid, the said undivided half of said store with its appurtenances," etc. There was a mortgage upon the store, which was made by the testator's wife in her lifetime. The property was afterwards conveyed to the testator subject to this mortgage. The question arises whether the executors and trustees are to pay the whole of this mortgage or only such proportional part of it as they pay of the pecuniary legacies, in view of the necessary abatement of them. This property was specifically devised, and for that reason it was not to share with the ordinary pecuniary legacies the deduction to be made because of the insufficiency of assets. By the will the testator assumes the mortgage debt and makes it his own. It was previously a charge upon the store, without payment of which it was impossible to make a perfect title to the property. The specific devise is of the property free from encumbrances. We are of opinion that the Probate Court rightly held that this mortgage must be paid in full. *Andrews* v. *Bishop,* 5 Allen, 490, 493. *Bradford* v. *Forbes,* 9 Allen, 365. *Richardson* v. *Hall,* 124 Mass. 228, 236. *Brown* v. *Baron,* 162 Mass. 56.

The petitioners ask to be instructed as to whether the fund retained in their hands to pay the annuity to Anna F. Bowzer is, on the death of said Bowzer, to be divided among the legatees whose legacies abate, or is to be paid over under the fifteenth item of the will to the residuary legatees, the City Hospital and the North Congregational Society in Haverhill. We are of opinion that the gift to the residuary legatees under the fifteenth item is only of such part of the estate, if any, as remains after the payment of all the previous legacies in full; and if any of them are diminished for want of assets, the fund retained for the payment of Anna F. Bowzer under the twelfth

item is to be used on the death of the annuitant to make up the deficiency so far as may be.

The most important question in the case is whether all the legacies given by the thirteenth item of the will are to abate proportionally, or whether those mentioned in the subdivisions from one to twelve and a half inclusive, are to be paid in full, and the deduction is all to be made from the legacies mentioned in the remaining sixteen subdivisions from thirteen to twenty-eight inclusive. The general rule in case of a deficiency of assets is, that, unless it appears from the will that the testator otherwise intended, all general pecuniary legacies abate in equal proportions. In *Towle* v. *Swasey*, 106 Mass. 100, 104, Mr. Justice Colt says in the opinion: " The testator, in the absence of clear proof to the contrary, must be deemed to have acted upon the belief that his estate would be sufficient to answer the purposes to which he devotes it. . . . As between legacies which are in their nature mere bounties, the presumption of intended equality will prevail, unless there is unequivocal evidence to the contrary; and no priority will be allowed where the expressions of the will are ambiguous." See also *Richardson* v. *Hall*, 127 Mass. 64; *Boston Safe Deposit & Trust Co.* v. *Plummer*, 142 Mass. 257, 263 ; *Babbidge* v. *Vittum*, 156 Mass. 38. The recognized exception to the general rule is where the legatee takes as a purchaser, as where the legacy is given in lieu of dower. This exception is not applicable to the present case. In order to give a preference to some over others of general pecuniary legatees, the expression of the intention of the testator so to do must be clear and conclusive. *Miller* v. *Huddlestone*, 3 Macn. & G. 513, 523. *Emery* v. *Batchelder*, 78 Maine, 233. There is no legal difference in this respect between legacies to individuals and legacies to public charities. Nor does relationship furnish any test, although all such facts may be considered in determining the intention of the testator.

In the present cases there is nothing to indicate that the testator thought that his property might be insufficient to pay the legacies. Indeed, the presumption is strong that he thought there was no doubt of its sufficiency. There is no expression from the beginning to the end of the will indicating that he

wished to make a distinction between legacies to the individuals mentioned in the thirteenth item of the will and legacies to charitable corporations. Of these persons the nearest of kin to the testator was a cousin, and no others were nearer than children and grandchildren of a deceased cousin. Several of them were relations of his deceased wife, and others were friends. The agreed statement of facts shows that he was attached to many of these persons, and it also shows that he felt great interest in the public charities mentioned in the will. There is nothing in this branch of the case that justifies a finding that he intended to give the legacies to individuals precedence over legacies to charities. It is true that in the will the first twelve subdivisions of the thirteenth item, and the next subdivision, which is numbered twelve and one half, relate to individuals, and the remaining sixteen, except the last, which provides for the care of his burial lot, relate to charitable corporations. But this mode of arrangement and classification does not show that one class was considered more important or meritorious than the other. Indeed, it would seem that the small sum devoted to the care of his burial lot would be one of the last that he would have made subordinate to legacies to friends and distant relatives.

The thirteenth subdivision begins with these words: "Further, my said executors and trustees shall then pay over the following gifts and bequests, namely," etc. The words "further" and "then," used in such a connection, do not ordinarily denote anything more than an order of sequence. So far as we know, they have never been held, without more, to make the legacies following them residuary. They have repeatedly been held not to import a preference. *Blower* v. *Morret*, 2 Ves. Sen. 420. *Beeston* v. *Booth*, 4 Madd. 161. *Brown* v. *Allen*, 1 Vern. 31. *Thwaites* v. *Foreman*, 1 Coll. 409. *Everett* v. *Carr*, 59 Maine, 325. *Sumner* v. *American Home Missionary Society*, 64 N. H. 321.

The reference in the last item of the will to the fact, that "certain of the legacies and bequests named above are limited to be paid after certain events, as recited," etc., does not seem to us to relate to the question now before us. It seems to refer partly to the distinction between legacies payable before the

death of his sister and those payable afterwards.  We are of opinion that all the legacies payable under the thirteenth item of the will must abate proportionally, and that the construction put upon the will by the Probate Court was correct.

*Decrees accordingly.*