In re Will of Joseph Engels.

Henry Patrick Engels, Administrator de bonis non, et al., Appellants, v. Sebastian Engels et al., Appellees.

No. 40232.

April 14, 1930.

*Herrick & Ary* and *C. W. Pitts,* for appellants.

*Diamond & Jory* and *John McCandless,* for appellees.

Albert, J.—To an understanding of the questions involved herein, a chronological statement of the facts seems to be necessary.

Joseph Engels, a resident of LaSalle County, Illinois, died testate on January 13, 1917. The first section of his will orders that all just debts, funeral expenses, and costs of administration of his estate be paid from the money or property of his estate. Section 2 bequeaths all personal property to his wife, Mary Engels. Section 3 devises a life estate in all real estate to his wife. Section 4 provides:

"On the death of my said wife, I give, and devise to my son, H. P. Engels [a certain 80-acre tract of land in Sioux

County, Iowa], on the condition that my said son pay into my estate upon the death of my said wife the sum of $2,000, said sum to be a lien on said land until paid as aforesaid.''

Section 5 devises another 80-acre tract of land to Mary Budde, a daughter, on the same conditions and wording as in Paragraph 4.

Section 6 devises to Lena Geisler, a daughter, another 80-acre tract for life, with the remainder therein over to the children of her body, and if she have no issue at the time of her death, to the devisor's heirs at law. Said daughter is prohibited from alienating this property, by conveyance or otherwise, and from incumbering, by mortgage or otherwise, her interest in the described real estate during her life.

Section 7 devises another 80-acre tract of land in Sioux County, Iowa, to Anna Engels, a daughter, subject to all of the provisions and conditions attached to the devise in Paragraph 4.

Section 8 devises to Joseph, a son, an 80-acre tract of land in LaSalle County, Illinois, subject to the same provisions and conditions as in Paragraph 4.

Section 9 devises to William, a son, an 80-acre tract of land situated in LaSalle County, Illinois, subject to the same provisions and conditions as in Paragraph 4.

Section 10. ''On the death of my said wife, I give and bequeath to my children, Sebastian Engels, Kate Zoller and Lizzie Wuddel, the sum of $4,000.00 each.''

Section 12. ''All the rest, residue and remainder of my estate, whether real, personal or mixed, I give, devise and bequeath to my heirs at law, their heirs and assigns forever, share and share alike.'' ·

Section 13 appoints William Engels executor without bond.

This will was probated in Illinois, and letters testamentary were issued to William Engels on February 8, 1917. Thereafter, Ben (Sebastian) Engels, Kate Zoller, Lena Geisler, and Lizzie Wuddel filed a bill in the circuit court of LaSalle County, Illinois, to declare said testament null and void and to set aside the same, on the ground of mental incapacity and undue influence. After an expense of over $5,000 had been incurred, the contestants dismissed the bill in that court; and in Novem-

ber, 1919, William Engels, executor, filed a final report and accounting in that court, and was discharged.

On January 14, 1920, a duly authenticated copy of the will and the certified probate proceedings in the LaSalle County, Illinois, court was filed in the office of the clerk of the district court of Iowa in and for Sioux County, as a foreign will, with a petition by Henry (H.P.) Engels, praying ancillary administration; and on that date, said last will of Joseph Engels was duly admitted to probate as a foreign will in the latter named county. Six days thereafter, objections were filed to the probate of this foreign will by Ben (Sebastian) Engels, Lizzie Wuddel, and Lena Geisler, setting out substantially the same objections as were made in the original probate in LaSalle County, Illinois, charging the mental incapacity of the testator and undue influence.

The widow, Mary Engels, both in the proceedings in Illinois and in Iowa, filed her election to take under the will. Later, on September 9, 1920, the administrator filed a petition in the Sioux County district court, setting up the fact of the filing of the instrument contesting the validity of the will, and asking that the court authorize the employment of counsel for the defense of said will. An order was issued, granting the prayer of this application, and counsel was employed, who, in pursuance of their employment, filed an answer to said contestants, and proceeded, at large expense and time, to prepare the case, among other things taking about ten depositions in the state of Illinois. The case was set for trial, but, on September 12, 1921, it was dismissed by contestants. Later, the administrator *de bonis non* filed a report, asking the court to make special allowances to him for extra services in preparing the defense to said contest, and asking the allowance of fees for his attorneys. To this report four of the heirs filed objections. The matter was set down for hearing, and the court filed his opinion in said cause on February 17, 1923, and entered an order allowing the administrator $700, to cover all of his expenses and disbursements in relation to the contest, and allowing attorneys' fees in the sum of $1,500. This order further provided:

"That all the foregoing allowances and all costs to date in these proceedings are confirmed and established as valid claims against the said estate, and ordered paid by the adminis-

trator out of any funds that are now or may hereafter be in his hands available for said purpose.''

From this order no appeal was ever taken.

Nothing further seems to have been done in the matter, and on the 27th day of January, 1928, the widow, Mary Engels, died. There was no personal property in this estate in Iowa, and there seem to have been no funds coming into the hands of the administrator prior to this date. On the death of the mother, the four children who were each to receive 80 acres of land in Iowa, in accordance with the terms of the will, each paid to the administrator the sum of $2,000, making a total of $8,000. Thereafter, on August 29, 1928, the administrator filed an intermediate report, showing receipts at that time from three of the heirs amounting to $6,000 (Mary having not made her payment of $2,000, but it was made before the final report). This report shows that the administrator paid out the $700 allowed to him by the former order, plus $232.40 interest; also paid to the attorneys the amount previously allowed, of $1,500, plus $498 interest; that he paid the attorneys' and administrator's fee for settling said estate, amounting in all to $560, an administrator's bond of $40, and court costs in the sum of $39.29,—leaving a balance on hand of $2,430.40.

The administrator filed his final report on October 18, 1928, reciting the receipt of $2,000 from Mary, making a total sum on hand of $4,430.35, and reciting that, under the terms of the will, Sebastian, Kate, and Lizzie are entitled to this amount, share and share alike, under the tenth item thereof; that he paid to each of said named parties under said item of the will, and attached their receipts to his report, each in the sum of $1,476.78.

Due notice of this final report was served on all parties, in pursuance of the order of court; whereupon Sebastian, Kate, and Lizzie, in due time, filed objections to such report, objecting to the allowance of interest on the $700 and the $1,500 items, and objecting to the payment of these items and interest as charges against their legacies, and saying that these two items should be charged against the shares of the other heirs of the estate. They further say that the other items contained in this final report, to wit, the attorneys' and administrator's fee, costs of the bond, and court costs, should also be paid by

the other heirs of said estate, and no part of it should be paid by them, or any of them.

These objections to the final report were tried out, and on the 14th day of November, 1928, the court entered an order that the $700 item, plus interest, and the $1,500 item, plus interest, were disallowed as items and charges against the legacies of the three parties named in Item 10 of the will, and were not to be paid out of the $8,000 mentioned in said final report, and that the administrator should pay over the sum total thereof ($2,930.40) to the parties named in Item 10 of the will, share and share alike; that the other items, to wit, the statutory attorneys' and administrator's fee, cost of the bond, and court costs, were approved by the court to be paid out of the $8,000 fund in the hands of the administrator; and that the $2,930.40 ordered paid by the administrator should be paid on or before July 1, 1929, and in default of such payment, judgment should be entered against the administrator in favor of Sebastian Engels, Kate Zoller, and Lizzie Wuddel, and the said amount should be established as a lien against the tracts of land given to H. P. Engels, Mary Budde, Lena Geisler, and Anna Engels, one fourth thereof being made a lien on each 80-acre tract. Later, judgment was entered accordingly.

The administrator *de bonis non*, H. P. Engels, personally, Lena Geisler, Anna Engels, Mary Budde, and each of them, appeal, limiting their appeal, however, to the question of whether or not the $700 item, plus interest, and the $1,500 item, plus interest, are chargeable against them and their property.

Stripped, then, of all verbiage, the question we have before us is whether or not these items, amounting to $2,930.40, were properly chargeable personally against H. P. Engels, Mary Budde, Lena Geisler, and Anna Engels, and properly made a lien on the real property which they took under the terms of the will.

It cannot be gainsaid that the order entered by the court on the 17th day of February, 1923, fixing the amount of $700 in favor of the administrator for special services and the $1,500 allowed as attorney's fees were adjudged by the court to be valid claims against the estate, and ordered paid by the administrator out of any funds that ''now or may hereafter be in his hands available for said purpose.'' This order, never

having been appealed from, forecloses any investigation as to the validity of these two claims.

No serious contention or argument is made against the allowance of interest reported by the administrator on these two items, and therefore no further attention will be paid thereto.

Referring, for the moment, to the status of this matter in the Sioux County district court, it is to be noted that the will was duly admitted to probate, without contest or objection, and that, six days thereafter, the writing designated as "Objections to the Probate of the Will" was filed. The district court, in disposing of the matter when it was first before the court, treated this (whether rightfully or wrongfully, we do not now determine) as a proceeding to set aside the will, already duly probated; and to this action of the court's neither party objected, at the time, and while it was being so treated, the order on the first hearing was made. At most, therefore, we do not have the ordinary question of the allowance of expenses and attorney's fees in a contest on the question of whether or not a will shall be admitted to probate. We conceive, therefore, that the rule governing allowance of expenses and attorney's fees set down in the latter class of cases does not necessarily govern, where the action is to set aside a will already probated.

As heretofore shown, there was no personal property in the administration of this estate except the $8,000 paid in by the four named heirs who each received an 80-acre tract of land in Iowa. These 320 acres were all of the property, real or personal, within the Iowa jurisdiction. The court had already determined that these claims, amounting to a little over $2,930, were proper charges against the estate. The question then is, How shall this amount be paid?

It is apparent from the record heretofore set out that Sebastian, Kate, and Lizzie, each of whom was given a bequest of $4,000, instituted a contest in Illinois, and put the estate to an expense of over $5,000 in preparing to meet the same, and then voluntarily dismissed the proceedings. Later, Sebastian, Lizzie, and Lena instituted proceedings in Sioux County to set aside the will in this state, and in so doing, they put the estate to an expense of about $3,000; and when the matter was called for trial, they again dismissed the proceedings, and the expenses

incurred by this abortive attempt to set aside the will are a part of the expenses involved in this transaction, 'as above explained.

The question then is whether or not the $2,930.40 involved herein is to be paid by the executor *de bonis non* from the $8,000 paid into his hands by the parties receiving the Iowa real estate. The executor so proposed to make the payment, by a recommendation in his final report. The district court refused to approve this, and ordered these charges placed against the parties who received the Iowa real estate, and made the same a lien on their respective shares. Was this error?

We held in *Wilts v. Wilts*, 151 Iowa 149, that all proper charges in an estate should be first paid out of the personal property, except special bequests; second, from real estate appropriated by the will for that purpose; third, from real estate descending; and fourth, from real estate specifically devised.

No one will question, under this will, that the share received by each of these children of the 80-acre tract of land, described by governmental subdivisions, as each was in the will, is a specific devise. That the bequest of $4,000 to each of the three heirs named in Item 10 of the will is a general legacy, and not a specific one, see *In re Estate of Daniels*, 192 Iowa 326; *Leighton v. Leighton*, 193 Iowa 1299; 28 Ruling Case Law 289, 291; 40 Cyc. 1869, 1870.

It would then follow, under the usual course of distribution of the assets of an estate under the Iowa rule and statutes, that the children each receiving $4,000 must stand the costs of administration, which include the item of $2,930.40. From this standpoint it is equally true that the final report filed by the administrator should have been approved *in toto*.

Appellees filed an amendment to appellants' abstract of record, setting out certain correspondence between the presiding judge and some of the attorneys in relation to this case. The same was not a part of the record, and should not have been abstracted. The motion to tax the costs thereof to the appellees is sustained.—*Reversed*.

MORLING, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.